UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JACK R. STRANG,<br><br>        Plaintiff,<br><br>v.<br><br>DR. KILOLO KIJAKAZI<br>Acting Commissioner of Social Security<br><br>        Defendant. | CAUSE NO.: 3:20-CV-347-HAB |

**OPINION AND ORDER**

Plaintiff Jack R. Strang seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff alleges that he has been disabled since August 9, 1987, because of a variety of physical and mental impairments.

**ANALYSIS**

**A.     The ALJ's Decision**

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must show that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A); § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)[1]; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since the alleged onset date of August 9, 1987; however, the ALJ further determined that he had not engaged in substantial gainful activity (SGA) since 2004. At step two, the ALJ found that Plaintiff had the severe impairments of obesity, status post-traumatic brain injury, headaches, depression, and anxiety. The ALJ stated that these impairments significantly limit the ability to perform basic work activities. The ALJ found that although the Plaintiff's records reference a shoulder impairment and very mild carpal tunnel syndrome, these issues were non-severe as he had regained full range of motion in his shoulder by December 2018, and his carpel tunnel syndrome was successfully treated by over-the counter medicines.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 13.) Although obesity is no longer a listed impairment, the ALJ considered, consistent with Social

---

[1] As discussed in *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003), the Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Pt. 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Pt. 416 of the regulations) are, for the most part, substantially identical. For convenience, the Court will generally cite herein to only the Title II statutes and regulations.

Security Ruling 19-2p, how the claimant's obesity has affected his other impairments and whether those impairments, combined with the obesity, meet or equal a listing. Additionally, the ALJ factored the claimant's obesity into her assessment of the claimaint's residual function capacity. The ALJ also considered the claimant's history of traumatic brain injury and found that he can stand from a seated position and his "strength, range of motion, and sensation were often intact." The ALJ considered 12.04 and 12.06 and found that considered, singly and in combination, the claimant's mental impairments did not meet or medically equal the criteria in those listings. As part of this determination, the ALJ considered the Paragraph (B) criteria and found no extreme limitation in any broad area of functioning. (R. 14). Rather, she found claimant to have a moderate limitation in remembering and applying information, a minimal limitation in interactions with others, and no limitations in concentrating, persisting or maintaining pace or in adapting or managing oneself. (*Id.*).

Before moving to step four, the ALJ found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he could only occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds. The RFC included limitations that claimant must avoid all exposure to vibration, moving machinery, and unprotected heights; work with a moderate level of noise; and occasional use of the left, non-dominant, upper extremity. Plaintiff is able to sustain work that can be learned in 30 days, or less, with simple, routine tasks and routine workplace changes.

Based on the above RFC and her hypothetical questions to the vocational expert (VE), the ALJ found that Plaintiff has no past relevant work experience. The ALJ further found that there

3

were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

**B.     Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the

important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**C.      Analysis**

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because it failed to address any limitations corresponding to Plaintiff's post-traumatic injury headaches, which the ALJ treated as severe, and she further glossed over the opinion of the Plaintiff's treating physician about his headaches. The Plaintiff submits that the RFC did not properly account for "time off task or interruptions in concentration" caused by Plaintiff's chronic headaches/migraines and the ALJ failed to consider the disabling opinion of Plaintiff's treating physician, Dr. Laura Hirschler (Dr. Hirschler). Because the Court agrees that the ALJ failed to adequately consider the record evidence related to Plaintiff's migraine headaches as well as to evaluate Dr. Hirschler's assessment of the Plaintiff's migraines when crafting the RFC, the Court must remand.

This Court's review of the record shows that the ALJ altogether failed to address the evidence Plaintiff presented with respect to the severity, frequency, and disabling effect of the chronic headaches he suffered as a result of a past traumatic brain injury. Evidence in the record establishes that Plaintiff presented to Dr. Hirschler's office three times between July 3 and October 31, 2017, complaining of headaches, clumsiness, loss of consciousness, memory difficulty, olfactory disturbance, and vision changes. (R. 292). He indicated the headaches, of varying duration, occurred "very often" and did not subside with over-the-counter medications. Dr. Hirschler noted that he presented with associated symptoms from his prior head injury "including migraines." (R. 284). In January 2018, Plaintiff reported to Dr. Hirschler that he was experiencing

daily severe headaches that forced him to lie down and sleep. (R. 280). A brain MRI from February 12, 2018, revealed "encephalomalacia in the right anterior front lobe and in the anterior right temporal lobe and…in the left frontal lobe," "mild generalized brain atrophy," and "mild chronic white matter ischemic change in the periventricular zones in both cerebral hemispheres." (R. 265). Plaintiff confirmed with his neurologist, Dr. Paula Toth-Russell, on February 15, 2018, that he suffered chronic headaches from which he received no relief from prescription or over-the-counter medications. (R. 262-63). At a follow-up appointment with Dr. Hirschler in March 2018, Plaintiff again noted daily headaches and Dr. Hirschler reflected in her notes "I do believe he is disabled but would like the evidence of his neuropsych testing." (R. 278). On June 12, 2018, Plaintiff again presented to Dr. Hirschler complaining of daily headaches and that the prescribed medications were not helping him. Additional visits to various providers related to his headaches occurred on October 1, 2018, February 12, 2019, and April 25, 2019. (R. 439, 400, and 395).

Besides the medical records, at the Plaintiff's disability hearing, he testified that his headaches occurred three to four times a day, he needed to lay down and cover his eyes when he had a headache, light and sound affected his headaches, and, if he was driving at the time of a headache onset, he had to pull over. When his headaches were too severe, he could not drive. (R. 453-456).

Despite all this evidence, in assessing the Plaintiff's RFC, the ALJ's opinion does not mention Dr. Hirschler's records or Plaintiff's repeated complaints to medical providers about the severity and frequency of his migraine headaches. Instead, the ALJ seemingly ignored them stating, "we will not defer or give any specific evidentiary weight, including controlling weight to any prior administrative medical findings or medical opinions, *including those from your medical sources*." (R. 18) (emphasis added). The ALJ did state, "the record does not document sufficient

objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant," (R. 16) but identifies no rationale as to why she made this finding. The ALJ then ultimately concluded, in laundry list fashion, all the impairments she found severe and simply concluded that the RFC she designed accommodates them. (R. 18)

Apparently, the ALJ has never suffered from a migraine let alone ones occurring with any regularity.[2] The record, which at least for the Plaintiff's migraines was largely ignored, shows that the Plaintiff reported repeatedly to his care providers with complaints of frequent and severe chronic headaches. The medical records documented that he had been prescribed several medications (Topamax and Amitriptyline) which provided little or no relief and further documented the daily issues Plaintiff was having as a result of having to lie down upon onset of a headache. Plaintiff kept a "headache journal" on the advice of Dr. Hirschler to document the frequency and severity of the headaches, pain – a journal that goes unmentioned in the ALJ's decision. Additionally, the Plaintiff's own testimony at his hearing revealed his struggles performing daily activities.

What all this means here is that by not properly considering the record evidence, the ALJ did not build a logical bridge between her RFC conclusions and the evidence she used to support those conclusions. While she found the Plaintiff's migraines to be a "severe impairment," the ALJ fails to explain or account for that reality. For instance, as Plaintiff points out, there is no consideration in the RFC for time off task that might occur because of his migraines, no accommodation for unscheduled time off that might occur upon onset of a migraine, and no

---

[2] Migraines are the 6th most disabling illness in the world and cause "extremely incapacitating neurological symptoms." Migraine Facts - Migraine Research Foundation.

7

consideration of the frequency for which migraine-related absences might occur. In fact, the RFC as set out by the ALJ ignores the effects the Plaintiff's migraines could have on employment.

Further, the RFC analysis "must always consider and address medical source opinions." See S.S.R. 96-8p. Agency regulations address the evaluation of opinion evidence for claims filed before March 27, 2017. 20 C.F.R. § 404.1527.[3] These regulations provide that in weighing the medical opinions, the ALJ must assess: (1) the examining relationship; (2) treatment relationship; (3) length of the treatment relationship and the frequency of the examination; (4) nature and extent of the treatment relationship; (5) supportability; (6) consistency; (7) specialization; and (8) any other factors brought to the ALJ's attention. Here, the ALJ not only failed to examine these factors for Dr. Hirschler but, if she attempted to support them without specifically referencing them, she fails to explain her conclusion based on the record before her. The ALJ provided no analysis, failed to weigh all the medical findings, and provided no discussion of the factors in 20 C.F.R. § 404.1527(c).

In sum, the ALJ failed to provide a complete analysis and discussion to form a logical bridge from the evidence to a conclusion. *See Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). Without proper analysis, the Court cannot follow the ALJ's reasoning and find that the RFC determination and thus, the disability denial, was supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order. The Clerk is directed to enter judgment in favor of the Plaintiff.

SO ORDERED on August 31, 2021.

---

[3] These regulations were revised on January 18, 2017 and only apply to claims filed with the Agency after March 27, 2017.

                            *s/ Holly A. Brady*
                            JUDGE HOLLY A. BRADY
                            UNITED STATES DISTRICT COURT